# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**LORENER WOOTEN**                         :
3402 Cornwell Square Drive                 :
Apt 104                                    :
Riverview, FL 33578                        :                    **19 - 2 1 3 3**
                                           :
                        Plaintiff,         :      CIVIL ACTION NO:_____
                                           :
              v.                           :      CASE: JURY TRIAL DEMANDED
                                           :
**CITY OF WILMINGTON**, a Municipal        :
     Entity having principal offices       :
     located at                            :
800 No. French Street                      :
Wilmington, DE 19801                       :
                        Defendant          :

## COMPLAINT
## JURISDICTION, VENUE AND PARTIES

1.         Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, as amended by § 1981a (hereinafter, "Title VII"), 42 U. S. C.

§1983, and §1988.  Federal jurisdiction is invoked pursuant to 28 U.S.C. §1331

and §1343.  The Court's Pendent jurisdiction is invoked pursuant to 28 USC

§1367(a).

2.         Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

inasmuch as Plaintiffs' causes of action arose in the District of Delaware, and all

the Defendants are found in the District of Delaware.

3.         Plaintiff LORENER WOOTEN is an adult female individual presently aged

approximately 41 years old and a citizen of the State of Florida residing at 3402

Cornwall Square Drive, Apt. 104, Riverview, FL 33578.

4.      Defendant CITY OF WILMINGTON is (hereinafter "CITY") is a Municipal
Corporation located in the State of Delaware having principal offices located at
800 No. French Street, Wilmington, DE 19801.  At all times relevant hereto,
Defendant CITY was a municipality within the State of Delaware that employed
over 500 people.

5.      At all times material hereto, Defendant CITY acted or failed to act through
its authorized agents, servants, workmen and employees including, but not
limited to Marchelle Basknight, Hanifa Shabazz, Ciro Adams, Paul Coalsey and
Leon Tucker, who were at all times then and there acting within the course and
scope of their employment.  Specifically,  Defendant CITY, as a matter of custom,
policy and/or practice intentionally and deliberately failed to implement existing
anti-discrimination, anti-harassment and anti-retaliation policies and to
adequately train, supervise, discipline, or otherwise direct Ciro Adams
concerning race and sex discrimination and Paul Coalsey and Leon Tucker
regarding retaliation, thereby fostering and causing these individuals to engage in
the unlawful and illegal conduct described herein.

6.      At all times relevant hereto, Marchelle Basknight and Hanifa Shabazz, as
Chief of Staff of Defendant CITY's City Council and President of its City Council
respectively, were high-ranking city officials responsible for making and
implementing CITY policies, and their acts and failures to act were the direct acts

and failures to act of Defendant CITY.

7.        At all times relevant hereto, Ciro Adams, Paul Coalsey and Leon Tucker were Supervisory or Director-level employees whose acts and failures to act were the acts and failures to act of Defendant CITY.

8.        At all times relevant hereto, Defendant CITY was directly and vicariously liable for the acts and failures to act of Marchelle Basknight, Hanifa Shabazz, Ciro Adams, Paul Coalsey and Leon Tucker, its Supervisory or Director-level employees.

## ADMINISTRATIVE PROCEDURES

9.        Plaintiff filed charges of race and sex discrimination and retaliation against the Defendants with the District Office of the Equal Employment Opportunity Commission, Charge No. 17C-2018-00559, on July 11, 2018.

10.       Plaintiff also received a notice dated October 7, 2019 that a Notice of Right to Sue Within 90 Days would be sent from the U. S. Department of Justice. A copy of the October 7, 2019 letter is attached hereto and marked as Exhibit "A".

11.       Thereafter, Plaintiff filed additional charges of retaliation against the Defendants on November 19, 2018 with the District Office of the Equal Employment Opportunity Commission, Charge Number 17C-2018-00774.

12.       A Notice of Right to Sue within 90 Days was issued to the Plaintiff on August 20, 2019.  A copy of that August 20, 2019 Right to Sue letter is attached

hereto and marked Exhibit "B".

## BACKGROUND ALLEGATIONS

13.     The Plaintiff here incorporates the allegations in all preceding paragraphs as if the same were re-alleged here in their entirety.

14.     Plaintiff Wooten began working with Defendant CITY in January 2013 when she was hired as a Traffic and Web Content Coordinator for WITN, Defendant CITY's public cable television station.

15.     Later, her job position was reclassified, and by July 2018, Plaintiff Wooten position was again re-classified to Digital Media & Web Content Producer.

16.     At all times relevant hereto, Defendant CITY ostensibly maintained a strict non-discrimination policy prohibiting discrimination, harassment and/or retaliation in all areas of employment.

17.     Furthermore, Defendant CITY ostensibly maintained a Harassment - Free Work Environment policy proscribing verbal and physical conduct by any employee that harasses, disrupts, or interferes with another's work performance. Pursuant to this policy, Defendant CITY ostensibly prohibits harassment and retaliation, whether engaged in by a fellow employee, supervisor, manager, or by someone not directly connected to the City.

18.     At all times relevant hereto, Marchelle Basknight, Defendant CITY's City Council Chief of Staff, and Ms. Hanifa Shabazz, President of Defendant CITY's City Council, were familiar with City Councilman Ciro Adams' reputation as being

sexually predatory, and knew that he targeted Black women in his predations.

19.     As City Council Chief of Staff and City Council President, however, neither Marchelle Basknight nor Hanifa Shabazz made any effort, and therefore Defendant CITY made no effort, to educate, reprimand Ciro Adams regarding race and sex discrimination, thereby allowing, fomenting and fostering the conduct complained of herein.

## OPERATIVE ALLEGATIONS

### Race and Sex Discrimination

20.     At all times relevant hereto, Mr. Ciro Adams was a white male and City Councilman for Defendant CITY, a person directly connected to Defendant CITY and its activities, and a high-ranking policy-making official for Defendant CITY.

21.     In or around September 9, 2017, while the Plaintiff was attending a city approved social event, City Councilman Ciro Adams, who was also at the event, touched and rubbed the Plaintiff's behind and, as he did so, whispered into her ear that she was "a beautiful Black woman."

22.     Plaintiff found the touching and comment racist, sexist, offensive and repulsive, and it frightened and disgusted her and made her physically ill.

23.     In response, the Plaintiff pushed Mr. Adams away from her and walked away.

24.     Immediately, the Plaintiff told Mr. Wyndell Raulston, a freelancer for Defendant City who was standing nearby, what had just occurred, and then she

grabbed her purse and left the building.

25.       Plaintiff reported the incident to Defendant CITY's City Council President,
Ms. Hanifa Shabazz, who indicated that she would investigate the matter and
speak to Councilman Adams.

26.       Plaintiff Wooten found the unwanted sexual touching and racist remark so
offensive and unsettling, and the general work environment so racially and
sexually hostile and offensive, that she applied for and was allowed to go out
from work under the Family Medical Leave Act on September 21, 2017.

27.       In or about October 4, 2017, while Plaintiff Wooten was on FMLA leave,
City Council President Shabazz telephoned her to see how she was doing, and
the Plaintiff reported that she felt still sick.

28.       Per Ms. Shabazz' mediation and followup on the Plaintiff's report, Ms.
Wooten agreed to meet with Mr. Adams to discuss the matter, but instead Ms.
Shabazz told Ms. Wooten that she had notified Defendant CITY's Human
Resources of the allegations of Mr. Adams' inappropriate conduct; HR in turn told
Ms. Shabazz that the matter would be investigated.

29.       Although scheduled to meet with Ms. Sheila Martin, Defendant CITY's HR
Administrator, Ms. Wooten could not meet with her owing to conflicts in Ms.
Martin's schedule.

30.       Plaintiff Wooten remained out on FMLA leave until Friday November 24,
2017, but she was still so sickened by the incident that she took additional leave

from work until December 31, 2017.

31.     While Plaintiff Wooten was out on leave, Ms. Yvonne Johnson, another African American woman, came forth in November 2017 to disclose to Ms. Martin that Mr. Adams had made comments to her that made her feel "uncomfortable."

32.     More specifically, Ms. Johnson reported to Ms. Martin that Mr. Adams had inquired about her marital status and commented on her attractiveness, and that this had made her feel uncomfortable.

33.     Ms. Martin, in turn, informed Ms. Charlotte Barnes, Defendant CITY's HR Director, about Ms. Johnson's complaint.

34.     Ms. Johnson thereafter reported to Ms. Martin on December 15, 2017 that, during a brief encounter with Mr. Adams in a hallway, Mr. Adams had touched and grasped her elbow.

35.     Thereafter, on December 19, 2017, Ms. Martin met with Mr. Adams to inform him of the complaints Ms. Johnson against him, but he denied being inappropriate with her.

36.     On January 22, 2018, Ms. Wooten finally met with HR Administrator, Ms. Martin, and reiterated to her how Mr. Adams had touched her and what he said.

37.     In turn, Ms. Martin and Defendant CITY decided that the matter should be investigated by an independent agency, and Ms. Lori Gliva an HR professional, to investigate the matter.

38.     Mr. Adams, however, refused to meet with Ms. Gliva saying that he was

uncomfortable doing so and felt that the matter had been resolved.

39.     After further investigation, Ms. Gliva concluded that Mr. Adams had a pattern of "questionable behavior" concerning professional settings, that he appears to not completely understand social cues and that he has been informal with his interactions with colleagues.

40.     Thus, Defendant CITY had been aware or should have been aware of Mr. Adams' "questionable behavior" and taken steps to educate and train him in Defendant CITY's policies and against race and sex discrimination.

41.     Mr. Adams' conduct created a racially and sexually hostile work environment that was pervasive in nature, and which Plaintiff Wooten found intolerable.

42.     Mr. Adams engaged in the complained-of conduct in September 2017 only because Defendant CITY had failed to implement its anti- discrimination and anti-harassment policies and failed to educate or train Mr. Adams regarding race and sex discrimination.

43.     Later, in a September 17, 2018 meeting, however, Mr. Adams denied ever being inappropriate with either Ms. Johnson or the Plaintiff, and specifically denied that he would ever touch anyone on their behind.

**Retaliation**

44.     After the Plaintiff returned from her FMLA and vacation leave, the work environment at Defendant CITY became increasingly and pervasively hostile.

45.        In or about March 2018, Plaintiff reported to her supervisor, Ms. Marchelle

Basnight, City Council Chief of Staff, that she had overheard Mr. Paul Coalsey,

Station Manager of Defendant CITY's cable television station WITN, and a white

adult male, talking about her to two WITN producers suggesting to them that they

not speak with the Plaintiff because she was a troublemaker.

46.        Plaintiff believes and therefore avers, that Mr. Coalsey urged other WITN

employees and producers not to speak with her for no other reason than her race

and to retaliate against her for having complained about Mr. Adams who, like Mr.

Coalsey, is also white.

47.        Subsequently, Defendant CITY moved the Plaintiff's work station to a

position right outside City Council President's office which was separate and

isolated from other of her co-workers.

48.        Plaintiff believes and therefore avers that Defendant CITY moved the

Plaintiff's work station as described for no other reason than to retaliate against

her for having complained about Mr. Adams' actions.

49.        Later, Leon Tucker, Communications Director of Defendant CITY's cable

station told her that she was not to use a flash when taking photographs when

the station was filming, despite knowing that this restriction would impact

negatively on her work performance.

50.        On July 3, 2018, Mr. Tucker told her that her desktop computer would be

taken from her and that she would have to use her laptop computer instead,

despite knowing that this would also impact negatively on her work performance.

51.     The Plaintiff believes, and therefore avers, that Mr. Tucker, and therefore

Defendant CITY, denied her the use of either a camera flash or a desktop

computer for no other reason than to retaliate against her.

52.     At no point did Defendant City reprimand or punish Paul Coalsey or Leon

Tucker, or otherwise train and educate them with respect to retaliation.

53.     As a direct and proximate result of Defendant CITY's actions, Plaintiff

54.     On July 11, 2018, Plaintiff Wooten filed a Charge of Discrimination against

Defendant CITY alleging race and sex discrimination and retaliation. (See

Exhibit "A").

55.     after the Plaintiff filed her July 11, 2018 Charge, Defendant CITY further

retaliated against her by suspending her from her position, a response that was

far out of proportion to the offense committed.

56.     More specifically, on August 20, 2018, Plaintiff Wooten inadvertently

uploaded to Defendant CITY's twitter account material that was religious in

nature, but inappropriate for that Twitter account; Defendant CITY accused

Plaintiff of using City work time to conduct personal business.

57.     In a letter dated August 22, 2018, City Council Chief of Staff Basknight,

and therefore Defendant CITY, suspended the Plaintiff from her position as

Digital & Media Web Content Coordinator in Defendant City's City Council

effective August 21, 2019 through August 24, 2018, or for four days, while the

matter could be investigated.

58.     When Plaintiff Wooten attempted to return to work, she was told that the investigation had not been completed and that she would have to remain on suspension.

59.     As of November 18, 2018, Plaintiff Wooten has remained on suspension, and has had no further contact wit Defendant CITY since September 2018.

60.     Defendant CITY's extended suspension was excessive and wholly out of proportion to the offense charged.

61.     The Plaintiff believes, and therefore avers, that Defendant CITY's action in suspending the Plaintiff was retaliatory in nature and in response to the earlier filed Charge of Discrimination.

62.     On November 19, 2018, after being suspended from her position since August 2018, Plaintiff Wooten filed a second Charge of Discrimination against Defendant CITY alleging its retaliation against the Plaintiff.

## FEDERAL CLAIMS

### COUNT I: Plaintiff -v- Defendant City of Wilmington, Delaware
### (Violation to Title VII, 42 USC §2000e-2(a)(1)

63.     The allegations in all preceding paragraphs are incorporated and made part of this paragraph as if fully set forth here.

64.     The acts and/or failures to act of Ciro Adams and Raul Coalsey, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff in the terms and conditions of her employment and denied her of rights

and/or protections secured to her by the Equal Protection Clause of the Fourteenth Amendment, on the basis of her race.

65.    The acts and failures to act of Ciro Adams and Paul Coalsey, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff on the basis of her race and constituted an unlawful employment practice in violation of 42 U. S. C. 2000e-1.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant City of Wilmington, Delaware in a sum in excess of One Hundred Fifty Thousand Dollars ($150.000.00).

### COUNT II: Plaintiff -v- Defendant City of Wilmington, Delaware
### (Violation to Title VII, 42 USC §2000e-2(a)(1)

66.    The allegations in all preceding paragraphs are incorporated and made part of this paragraph as if fully set forth here.

67.    The acts and/or failures to act of Ciro Adams and Paul Coalsey, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff in the terms and conditions of her employment and denied her of rights and/or protections secured to her by the Equal Protection Clause of the Fourteenth Amendment, on the basis of her sex.

68.    The acts and failures to act of Ciro Adams and Paul Coalsey, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff on the basis of her race and sex and constituted an unlawful employment practice in violation of 42 U. S. C. 2000e-1.

*WHEREFORE*, the Plaintiff demands judgment against the Defendant City of Wilmington, Delaware in a sum in excess of One Hundred Fifty Thousand Dollars ($150.000.00).

### COUNT III: Plaintiff -v- Defendant City of Wilmington, Delaware
### (Violation to Title VII, 42 §USC 2000e-2(a)(2)

69.         The allegations in all preceding paragraphs are incorporated and made part of this paragraph as if fully set forth here.

70.         The acts and/or failures to act of Ciro Adams and Paul Coalsey, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff by serving to limit, segregate and classify the plaintiff in a way which deprived the Plaintiff of employment opportunities and adversely affected her status as an employee because of her race.

71.         The acts and failures to act of Ciro Adams and Paul Coalsey, which were the acts and failures to act of Defendant CITY, discriminated against the Plaintiff on the basis of her race and constituted an unlawful employment practice in violation of 42 U. S. C. 2000e-2(a)(2).

*WHEREFORE*, the Plaintiff demands judgment against the Defendant City of Wilmington, Delaware in a sum in excess of One Hundred Fifty Thousand Dollars ($150.000.00).

### COUNT IV: Plaintiff -v- Defendant City of Wilmington, Delaware
### (Violation to Title VII, 42 §USC 2000e-2(a)(2)

72.         The allegations in all preceding paragraphs are incorporated and made

part of this paragraph as if fully set forth here.

73.        The acts and/or failures to act of Ciro Adams and Paul Coalsey, which

were the acts and failures to act of Defendant CITY, discriminated against the

Plaintiff by serving to limit, segregate and classify the plaintiff in a way which

deprived the Plaintiff of employment opportunities and adversely affected her

status as an employee because of her sex.

74.        The acts and failures to act of Ciro Adams and Paul Coalsey, which were

the acts and failures to act of Defendant CITY, discriminated against the Plaintiff

on the basis of her sex and constituted an unlawful employment practice in

violation of 42 U. S. C. 2000e-2(a)(2).

   *WHEREFORE*, the Plaintiff demands judgment against the Defendant City of
Wilmington, Delaware in a sum in excess of One Hundred Fifty Thousand Dollars
($150.000.00).

### COUNT V: Plaintiff -V- City of Wilmington, Delaware
### (VIOLATION OF TITLE VII, 42 U. S. C. §2000(e)-3(a))

75.        The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

76.        The acts and failures to act of Marchelle Basknight, Paul Coalsey and

Leon Tucker, specifically the acts of encouraging other employees not to speak

with the Plaintiff and then restricting the Plaintiff from performing her work

properly, and Defendant CITY's subsequently suspending the Plaintiff from her

job, retaliated against the Plaintiff for filing reports of race and sex discrimination

and harassment.

77.         The acts and failures to act of Marchelle Basknight,  Paul Coalsey and

Leon Tucker, which were the acts and failures to act of Defendant CITY,

constituted an unlawful employment practice proscribed by 42 U. S. C.

§2000e-3(a).

78.         As a result of Paul Coalsey and Leon Tucker' actions, and therefore

Defendant CITY's actions, and Defendant CITY's direct retaliatory actions

through Marchelle Basknight, the Plaintiff has and may be impaired in her

employment opportunities, and has suffered loss of income, loss of professional

stature, mental anguish, embarrassment, humiliation, and loss of self-esteem in

violation of 42 U. S. C. §2000(e)-3(a).

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in

this Count, individually and/or jointly, for damages in excess of One Hundred Fifty

Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC

§1988(b).

### Count VI: Plaintiff v. Defendant City of Wilmington, Delaware
### (Violation of 42 U. S. C. §1983, 1st and 14th Amendments)

79.         The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

80.         Defendant City of Wilmington, acted under color of law, and with

deliberate indifference to the Plaintiff's rights to be free from retaliatory conduct

by its City Council leaders and other employees, by failing to adequately train,

supervise and instruct Ciro Adams, Paul Coalsey and/or Leon Tucker in the

illegality and impropriety of discriminating against individuals on the basis of their race and sex and retaliating against employees for reporting incidents of sexual and racial employment discrimination.

81.     Defendant CITY is strictly liable for the acts and failures to act of Marchelle Basknight, Hanifa Shabazz, Ciro Adams, Paul Coalsey and/or Leon Tucker.

82.     As a result of said failure to train, supervise and instruct Paul Coalsey and Leon Tucker, who then retaliated against the Plaintiff as described herein, the Plaintiff was deprived of her rights under the First and Fourteenth Amendments to the United States Constitution.

83.     As a result of the Defendants' actions, the Plaintiff has and may be impaired in her employment opportunities, and has suffered loss of income, loss of professional stature, mental anguish, embarrassment, humiliation, and loss of self-esteem in violation of 42 U. S. C. §1983.

**WHEREFORE**, the Plaintiff prays for Judgment against the defendant named in this Count, individually and/or jointly, for damages in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for reasonable attorneys fees pursuant to 42 USC §1988(b).

## STATE LAW CLAIMS

### COUNT VII:   Plaintiff -v- Defendant City of Wilmington, Delaware
### (Violation of 19 Delaware Code, §711(a)(1))

84.     The allegations in all preceding paragraphs are incorporated and made part of this paragraph as if fully set forth here.

85.       Title 19, Delaware Code, Section 711(a)(1) provides, where relevant, that:

(a) It shall be an unlawful employment practice for an employer to:

(1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race....

86.       The acts and failures to act of Ciro Adams and Paul Coalsey, as described herein, were the acts and failures to act of Defendant CITY and tended to discriminate against Plaintiff Wooten with respect to compensation, hire, tenure, terms, conditions or privileges of her employment on the basis of her race, and constituted an unfair employment practice proscribed by 19 Delaware Code, §711(a)(1).

87.       The acts and failures to act of Defendant CITY, specifically its failure to train, educate Ciro Adams and Paul Coalsey with respect to Defendant CITY's anti discrimination, anti-harassment and anti-retaliation policies, enabled, facilitated and fomented their acts and failures to act as described herein, which tended to discriminate against Plaintiff Wooten with respect to compensation, hire, tenure, terms, conditions or privileges of her employment on the basis of her race.

**WHEREFORE**, the Plaintiff demands judgment against Defendant City of Wilmington in a sum in excess of One Hundred Fifty Thousand Dollars ($150,000.00), and for any and all counsel fees and costs as may be allowed by law.

**COUNT VIII:   Plaintiff -v- Defendant City of Wilmington, Delaware
(Violation of 19 Delaware Code, §711(a)(1))**

88.       The allegations in all preceding paragraphs are incorporated and made part of this paragraph as if fully set forth here.

89.       Title 19, Delaware Code, Section 711(a)(1) provides, where relevant, that:

(a) It shall be an unlawful employment practice for an employer to:

(1) Fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment because of such individual's ....sex...,

90.       The acts and failures to act of Ciro Adams and Paul Coalsey, as described herein, were the acts and failures to act of Defendant CITY and tended to discriminate against Plaintiff Wooten with respect to compensation, hire, tenure, terms, conditions or privileges of her employment on the basis of her sex, and constituted an unfair employment practice proscribed by 19 Delaware Code, §711(a)(1).

91.       The acts and failures to act of Defendant CITY, specifically its failure to train, educate Ciro Adams and Paul Coalsey with respect to Defendant CITY's anti- discrimination, anti-harassment and anti-retaliation policies, enabled, facilitated and fomented their acts and failures to act as described herein, which tended to discriminate against Plaintiff Wooten with respect to compensation, hire, tenure, terms, conditions or privileges of her employment on the basis of her sex.

**WHEREFORE**, the Plaintiff demands judgment against Defendant City of Wilmington in a sum in excess of One Hundred Fifty Thousand Dollars ($150.000,00), and for any and all counsel fees and costs as may be allowed by law.

**COUNT IX:   Plaintiff -v- Defendant City of Wilmington, Delaware**

**(Violation of 19 Delaware Code, §711(a)(2))**

92.     The allegations in all preceding paragraphs are incorporated and made

part of this paragraph as if fully set forth here.

93.     Title 19, Delaware Code, Section 711(a)(2) provides, where relevant, that:

(a) It shall be an unlawful employment practice for an employer to:

(2) Limit, segregate or classify employees in any way which would deprive or
tend to deprive any individual of employment opportunities or otherwise
adversely affect the individual's status as an employee because of such
individual's race...

94.     The acts and failures to act of Ciro Adams and Paul Coalsey, as described

herein, were the acts and failures to act of Defendant CITY and tended to deprive

Plaintiff Wooten of employment opportunities and adversely affect her status as

an employee because of her race and constituted an unfair employment practice

proscribed by 19 Delaware Code, §711(a)(1).

95.     The acts and failures to act of Defendant CITY, specifically its failure to

train, educate Ciro Adams and Paul Coalsey with respect to Defendant CITY's

anti discrimination, anti-harassment and anti-retaliation policies, enabled,

facilitated and fomented their acts and failures to act as described herein, which

tended to deprive Plaintiff Wooten of employment opportunities and adversely

affect her status as an employee because of her race.

**WHEREFORE**, the Plaintiff demands judgment against Defendant City of

Wilmington in a sum in excess of One Hundred Fifty Thousand Dollars ($150,000.00),

and for any and all counsel fees and costs as may be allowed by law.

**COUNT X:   Plaintiff -v- Defendant City of Wilmington, Delaware**
**(Violation of 19 Delaware Code, §711(a)(2))**

96.         The allegations in all preceding paragraphs are incorporated and made

part of this paragraph as if fully set forth here.

97.         Title 19, Delaware Code, Section 711(a)(2) provides, where relevant, that:

(a) It shall be an unlawful employment practice for an employer to:

(2) Limit, segregate or classify employees in any way which would deprive or
tend to deprive any individual of employment opportunities or otherwise
adversely affect the individual's status as an employee because of such
individual's ... sex,...

98.         The acts and failures to act of Ciro Adams and Paul Coalsey, as described

herein, were the acts and failures to act of Defendant CITY and tended to deprive

Plaintiff Wooten of employment opportunities and adversely affect her status as

an employee because of her sex and constituted an unfair employment practice

proscribed by 19 Delaware Code, §711(a)(1).

99.         The acts and failures to act of Defendant CITY, specifically its failure to

train, educate Ciro Adams and Paul Coalsey with respect to Defendant CITY's

anti discrimination, anti-harassment and anti-retaliation policies, enabled,

facilitated and fomented their acts and failures to act as described herein, which

tended to deprive Plaintiff Wooten of employment opportunities and adversely

affect her status as an employee because of her sex.

   **WHEREFORE**, the Plaintiff demands judgment against Defendant City of
Wilmington in a sum in excess of One Hundred Fifty Thousand Dollars ($150,000.00),
and for any and all counsel fees and costs as may be allowed by law.

   **COUNT XI:   Plaintiff -v- Defendant City of Wilmington, Delaware**

**(Violation of 19 Delaware Code, §726)**

100.        The allegations in all preceding paragraphs are incorporated and made

part of this paragraph as if fully set forth here.

101.        Title 19, Delaware Code, Section 726 provides, where relevant, that:

It shall be an unlawful employment practice for any employer to discharge, refuse
to hire or otherwise discriminate against any person.... because such person has
opposed any practice prohibited by this subchapter or because such person has
testified, assisted or participated in any manner in proceedings to enforce the
provisions of this subchapter.

102.        The acts and failures to act of Marchelle Basknight, Hanifa Shabazz, Paul

Coalsey and Leon Tucker, as described herein, were the acts and failures to act

of Defendant CITY and tended to discriminate against Plaintiff Wooten because

she opposed discriminatory practices prohibited by 19 Delaware Code,

§711(a)(1).

103.        The acts and failures to act of Defendant CITY, specifically its failure to

train, educate Paul Coalsey and/or Leon Tucker with respect to Defendant

CITY's anti discrimination, anti-harassment and anti-retaliation policies, enabled,

facilitated and fomented their acts and failures to act as described herein, which

tended to retaliate against Plaintiff Wooten because she opposed discriminatory

practices prohibited by 19 Delaware Code, §711(a)(1).

        **WHEREFORE**, the Plaintiff demands judgment against Defendant City of

Wilmington in a sum in excess of One Hundred Fifty Thousand Dollars ($150.000.00),

and for any and all counsel fees and costs as may be allowed by law.

Respectfully submitted,

Theopalis K. Gregory, Sr. Esq.
State Bar ID: 00861
2227 N. Market Street
Wilmington, DE 19802
(302)428-9500
theopalis10@aol.com