IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LORENER WOOTEN,<br><br>                  Plaintiff,<br>     v.<br><br>CITY OF WILMINGTON,<br><br>                  Defendant. | Civil Action No. 19-2133-RGA |

MEMORANDUM OPINION

Theopalis K. Gregory and Isaac H. Green, Jr., LAW OFFICE OF THEOPALIS GREGORY SR., Wilmington, DE, attorneys for Plaintiff.

Caitlyn E. Quinn and Laura Najemy, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, DE, attorneys for Defendant.

February 5, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant City of Wilmington's Motion to Dismiss. (D.I. 6). I have reviewed the parties' briefing. (D.I. 7, 14, 15).

### I.     BACKGROUND

Plaintiff Lorener Wooten filed a complaint alleging eleven counts of employment discrimination against Defendant under Title VII, 42 U.S.C. § 1983, and the Delaware Discrimination in Employment Act ("DDEA"). (D.I. 1). Plaintiff began working for Defendant in January 2013 as a Traffic and Web Content Coordinator for WITN, Defendant's public cable television station. (*Id.* at 4). By July 2018, Plaintiff's position was re-classified to Digital Media & Web Content Producer. (*Id.*).

Plaintiff alleges that on September 9, 2017 at a city-approved social event, City Councilman Ciro Adams touched and rubbed Plaintiff's behind and whispered that "she was a beautiful Black woman." (*Id.* at 5). Plaintiff alleges that she pushed Mr. Adams away from her and then walked away. (*Id.*). She immediately told Wyndell Raulston, a freelancer for Defendant, what happened and left the event. (*Id.* at 5-6). Plaintiff states that she found the touching and the comment to be racist, sexist, and offensive, and that "it frightened and disgusted her and made her physically ill." (*Id.* at 5).

Plaintiff reported the incident to Defendant's City Council President, Hanifa Shabazz. (*Id.* at 6). Plaintiff alleges that Ms. Shabazz indicated that she would investigate the matter and speak to Mr. Adams. (*Id.*). Plaintiff applied for and was permitted to go out on leave under the Family Medical Leave Act ("FMLA") on September 21, 2017, as she found the incident offensive and unsettling, and the "general work environment so racially and sexually hostile and

1

offensive." (*Id.*). Plaintiff spoke with Ms. Shabazz on October 4, 2017. (*Id.*). Ms. Shabazz told her that Defendant's Human Resources department had been notified of Plaintiff's allegations of Mr. Adams' conduct and that the Human Resources department told Ms. Shabazz that the matter would be investigated. (*Id.*).

Plaintiff was on FMLA leave until November 24, 2017 and took additional leave from work until December 31, 2017. (*Id.* at 6-7). During the time that Plaintiff was on leave, she alleges that another African American woman, Yvonne Johnson, disclosed to Sheila Martin, Defendant's Human Resources Administrator, that Mr. Adams had made her feel uncomfortable in two separate encounters. (*Id.* at 7).

Plaintiff met with Sheila Martin on January 22, 2018 and told Ms. Martin about the incident with Mr. Adams. (*Id.*). Defendant and Ms. Martin then had the matter investigated by an independent agency and Lori Gilva, a Human Resources professional. (*Id.*). Plaintiff alleges that Mr. Adams refused to meet with Ms. Gilva. (*Id.* at 7-8). At the end of the investigation, Ms. Gilva concluded, "Mr. Adams had a pattern of questionable behavior concerning professional settings, that he appears to not completely understand social cues and that he has been informal with his interactions with colleagues." (*Id.* at 8).

Plaintiff alleges that Defendant is responsible for the complained-of conduct in September 2017, as Defendant "failed to implement its anti-discrimination and anti-harassment policies and failed to educate or train Mr. Adams regarding race and sex discrimination." (*Id.*).

Plaintiff further alleges that upon return from her FMLA and vacation leave, her work environment was "increasingly and pervasively hostile." (*Id.*). In or around March 2018, Plaintiff reported to her supervisor that she overheard Paul Colsey, WITN's Station Manager, suggesting to two WITN producers that they not speak to Plaintiff "because she was a troublemaker." (*Id.* at

2

9). Plaintiff alleges that Mr. Colsey "urged other WITN employees and producers not to speak with her for no other reason than her race and to retaliate against her for having complained about Mr. Adams who, like Mr. [Colsey], is also white." (*Id.*)

Plaintiff states that her work station was moved to a location separate and isolated from that of her co-workers. (*Id.*). Plaintiff believes that this action was done "for no other reason than to retaliate against her for having complained about Mr. Adams' actions." (*Id.*). Plaintiff also alleges that she was told by Leon Tucker, Communications Director of WITN, not to use a flash when taking photographs while the station was filming. (*Id.*). Plaintiff complains that in July 2018, Mr. Tucker told her that her desktop computer would be removed and that she would have to use her laptop instead. (*Id.*). Plaintiff alleges that these actions were taken to retaliate against her. (*Id.* at 10).

On July 11, 2018, Plaintiff filed a Charge of Discrimination with the EEOC alleging race and sex discrimination and retaliation against Defendant. (*Id.*). On August 20, 2018, Plaintiff inadvertently uploaded material that was religious in nature to Defendant's Twitter account. (*Id.*). Plaintiff states that this material was inappropriate for that Twitter account. (*Id.*). Defendant accused Plaintiff of using work time to conduct personal business. (*Id.*). On August 21, 2018, Plaintiff was suspended for four days, while the matter was to be investigated. (*Id.* at 10-11). When Plaintiff attempted to return to work, she was told that the investigation was not yet complete and that she would remain suspended. (*Id.* at 11). As of November 18, 2018, Plaintiff was still on suspension and had had no contact with Defendant since September 2018. (*Id.*). Plaintiff alleges that her suspension was retaliation for filing a Charge of Discrimination and was "a response that was far out of proportion to the offense committed." (*Id.* at 10-11).

On November 19, 2018, Plaintiff filed a second Charge of Discrimination against Defendant alleging retaliation. (*Id.* at 11).

The Complaint contains eleven counts of discrimination under Title VII, 42 U.S.C. § 1983, and the DDEA. (D.I. 1). Counts I and II allege race and sex discrimination under 42 U.S.C. § 2000e-2(a)(1), in that Plaintiff was discriminated against in the terms and conditions of her employment. (*Id.* at 11-12). Counts III and IV allege race and sex discrimination under 42 U.S.C. § 2000e-2(a)(2), as she was limited, segregated and classified in a way which deprived Plaintiff of employment opportunities and adversely affected her status as an employee because of her race and sex. (*Id.* at 13-14). Count V alleges retaliation against Defendant under 42 U.S.C. § 2000e-3(a), for the acts of encouraging other employees not to speak with Plaintiff, restricting Plaintiff from performing her work properly, and suspending Plaintiff, in retaliation of Plaintiff's filing of a charge of discrimination. (*Id.* at 14-15). Count VI claims a violation of Plaintiff's First and Fourteenth Amendment rights through 42 U.S.C. § 1983. (*Id.* at 15-16). Counts VII to XI are claims under the DDEA that align with the allegations underlying Counts I to V: discrimination based on race and sex, and retaliation. (*Id.* at 16-22).

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 8 requires that a complainant provide "a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,

311 F.3d 198, 216 (3d Cir. 2002). Rule 12(b)(6) allows the defendant to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

To survive a motion to dismiss, a complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson*, 574 U.S. at 11.

### III.  ANALYSIS

#### A. Title VII Race and Sex Discrimination Claims

Counts I to IV allege race and sex discrimination under Title VII. Defendant moves to dismiss these claims, arguing that Plaintiff has not pled facts to show that she suffered an adverse employment action. (D.I. 7 at 7). Defendant also contends that Plaintiff does not allege facts to support her allegation that Defendant had knowledge of Mr. Adams' alleged acts and failed to take prompt corrective action, so there is no *respondeat superior* liability. (*Id.* at 8; D.I. 15 at 5).

In her opposition to the motion to dismiss, Plaintiff recharacterizes her allegations as hostile work environment claims under Title VII. (D.I. 14 at 11-16). However, "it is axiomatic

5

that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Thus, the Court will only consider the claims and allegations pled in the Complaint, not Plaintiff's hostile work environment theory.

Discrimination claims under Title VII require the use of the *McDonnell Douglas Corp. v. Green* burden-shifting framework. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). Under this framework, to state a claim, the plaintiff must first establish a prima facie case of discrimination, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), by showing that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position she sought to ... retain; (3) [she] suffered an adverse employment action;" and (4) similarly situated persons who were not members of her protected class were treated more favorably or there are other "circumstances that could give rise to an inference of intentional discrimination." *Drummond v. Amazon.com.dedc, LLC*, 2018 WL 5629811, at *5 (D. Del. Oct. 31, 2016) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

Plaintiff has shown that she is a member of two protected classes and the Court will assume that she was qualified for her position. (D.I. 1 at 1, 5). There is an inference of discrimination, as Plaintiff alleges that Mr. Adams "touched and rubbed Plaintiff's behind and, as he did so, whispered into her ear that she was a 'beautiful Black woman.'" (*Id.* at 5). The parties' dispute centers on whether Plaintiff has established that she suffered an adverse employment action.

In regard to an adverse employment action element of the claim, Plaintiff alleges that: (1) she overheard a co-worker telling other employees to avoid her; (2) her work station was moved; (3) she was not permitted to use her desktop computer; (4) she was not allowed to use flash

6

photography when the television programs were filming; and (5) she was ultimately suspended from her position. (*Id.* at 8-10). An adverse employment action is an action by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Mieczkowski v. York City School Dist.*, 414 F. App'x 441, 445 (3d Cir. 2011) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2011)).

Of the actions Plaintiff alleged, the only one serious and tangible enough to alter her "terms, conditions, or privileges of employment," was her suspension from her position. *Id.* However, Plaintiff does not allege facts that relate her ultimate suspension from her position to her interaction with Mr. Adams. Instead, Plaintiff alleges that the actions taken against her were in retaliation for reporting Mr. Adams' statement and filing a charge of discrimination with the EEOC. (*See* D.I. 1 at 9-11). Mr. Adams' actions took place on September 9, 2017. The suspension was instituted on August 21, 2018. Suspension would be an adverse action, but when it occurs nearly a year after the event that is supposed to give rise to the inference that it was discriminatory, it fails. Plaintiff does not plead any facts that about the adverse employment action under circumstances that give rise to an inference of discrimination based on her race or sex.

As Plaintiff has not alleged facts to support her claim that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination, Defendant's motion to dismiss Counts I to IV is granted.

### B. Title VII Retaliation Claim

Count V alleges retaliation against Defendant. (D.I. 1 at 14-15). Under Title VII, an employer is prohibited from discriminating against an employee "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

7

hearing under this subchapter." 42 U.S.C. 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate that: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity;" and (3) a causal connection exists between the protected activity and the employer's action." *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).

Defendant argues that Plaintiff fails to state a claim for retaliation under Title VII, as she has not alleged facts to support suffering an adverse employment action or that there was a causal connection between Plaintiff's protected activity and the employment action. (D.I. 7 at 8). Plaintiff counters that she has alleged sufficient facts to establish a prima facie case of retaliation. (D.I. 14 at 16).

I agree with Plaintiff. Under Title VII, "protected activity," includes participation in certain Title VII proceedings and opposition to unlawful discrimination under Title VII. *Moore v. City of Phila.*, 461 F.3d 331, 431 (3d Cir. 2006). Plaintiff engaged in a protected employee activity when she reported the incident with Mr. Adams to the City Council President and when she filed a charge of discrimination against Defendant alleging race and sex discrimination and retaliation on July 11, 2018. (D.I. 1 at 6, 11). Plaintiff has alleged facts to show that she suffered an adverse employment action, as she was suspended from her position from August 21, 2018 to August 24, 2018 and after that, she was told that she was to remain on suspension as the investigation was not complete. (*Id.* at 10-11). Lastly, she has alleged a causal connection. Courts look to temporal proximity and the circumstances as a whole to determine if a causal connection exists between a plaintiff's protected action and the adverse employment action. *See Daniels v. School Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Plaintiff alleges that the

retaliatory acts began after she returned from leave, which she took after reporting the incident with Mr. Adams. (D.I. 1 at 8-9). Plaintiff also plead facts to establish that the alleged retaliatory actions continued and culminated in her suspension after she filed a charge with the EEOC. (*Id.* at 9-10). This is sufficient to meet Plaintiff's burden.

As Plaintiff has pled a prima facie case of retaliation, Defendant's Motion to Dismiss is denied as to Count V.

### C. Section 1983 Claim

Count VI alleges that Defendant "acted under color of law, and with deliberate indifference to the Plaintiff's rights to be free from retaliatory conduct by its City Council leaders and other employees, by failing to adequately train, supervise and instruct Ciro Adams, Paul [Colsey] and/or Leon Tucker" of the impropriety of discrimination and retaliation. (D.I. 1 at 16). Plaintiff further alleges that "[a]s a result of said failure to train, supervise and instruct Paul [Colsey] and Leon Tucker, who then retaliated against the Plaintiff as described herein, the Plaintiff was deprived of her rights under the First and Fourteenth Amendments to the United States Constitution." (*Id.* at 15-16).

Defendant argues that Count VI fails because Plaintiff cannot bring a Title VII claim under Section 1983. (D.I. 7 at 12-13). Defendant asserts that Count VI is "clearly a Title VII retaliation claim improperly brought under 42 U.S.C. § 1983." (D.I. 15 at 8). Defendant contends that Plaintiff's Count VI claim alleges retaliation in response to reporting racial and sexual discrimination, which is appropriately resolved under Title VII. (*Id.* at 8-9). Defendant also argues that even if Plaintiff stated a viable § 1983 claim, Count VI still fails as it does not allege any municipal liability. (D.I. 7 at 15). Defendant asserts that the complaint alleges that Defendant is "strictly liable" for the "alleged acts and failures to act" of certain Defendant employees. (*Id.*).

9

Plaintiff asserts that Count VI seeks redress, not under Title VII, but for deprivation of her "rights to freedom of speech and for the deprivation of her rights to procedural due process." (D.I. 14 at 20). Plaintiff argues that the complaint sets forth a viable § 1983 claim as it alleges facts showing that Plaintiff complained to Defendant about Mr. Adams' conduct and that she was retaliated against by having her workplace moved, removing her computer, and being pretextually suspended. (*Id.* at 21-22). Plaintiff contends that after this retaliation and after Mr. Adams was determined to have a "pattern of questionable behavior," there was no action taken against him, he received no training, and he did not acknowledge his alleged wrongdoing. (*Id.*). Plaintiff argues that these facts were alleged in the complaint and plead a § 1983 claim as the facts show that Plaintiff "complained about the violations, but her complaints were rendered ineffective," and that Plaintiff's "due process and freedom of speech rights were effectively taken from her." (*Id.* at 22).

It is well established that Title VII claims may not be brought under § 1983. *Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 295 (3d Cir. 2017); *Sharma v. Wesley*, 2019 WL 3387786, at *6 (D. Del. July 26, 2019). Permitting pure Title VII claims under § 1983 would "thwart Congress's carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposefully fortified." *Williams*, 870 F.3d at 299. Therefore, in order to successfully plead a § 1983 claim, Plaintiff must allege facts to establish the violation of a constitutional right. Plaintiff has not done so. Plaintiff's allegations support a cause of action under Title VII, but they do not allege that her rights under the First and Fourteenth Amendments have been violated. In a conclusory fashion, Plaintiff simply states that her First and Fourteenth Amendment rights have been violated. (D.I. 1 at 16). As Plaintiff has not pled the violation of a constitutional right, her § 1983 claim fails.

Plaintiff's § 1983 claim also fails as it does not adequately allege municipal liability. A municipality may only be held liable under § 1983 where it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that "inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of NY*, 436 U.S. 658, 694 (1978). In other words, for a municipality to be liable for a deprivation of constitutional rights, the deprivation of rights must be a result of an unconstitutional custom or policy, or a constitutional custom or policy that is the "moving force" behind the unconstitutional actions of an employee. *Polk County v. Dodson,* 454 U.S. 312, 326 (1981); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). A municipality may not be held liable under § 1983 solely on a *respondeat superior* theory. *Monell,* 436 U.S. at 691.

In this case, Plaintiff has failed to allege facts supporting a basis for municipal liability. First, Plaintiff cannot hold Defendant liable on a *respondeat superior* theory, as that is not a permissible form of liability under § 1983. *See id.* Further, Plaintiff has failed to allege facts supporting the existence of a municipal custom or policy that caused her constitutional injury. In fact, Plaintiff states that Defendant had a "strict non-discrimination policy prohibiting discrimination, harassment and/or retaliation in all areas of employment," as well as a "Harassment-Free Work Environment policy proscribing verbal and physical conduct by any employee that harasses, disrupts, or interferes with another's work performance." (D.I. 1 at 4). Plaintiff has stated that such policies are in place and has not alleged that there is another "custom or policy" that was the "moving force" behind the unconstitutional actions of an employee. *See Colburn*, 946 F.2d at 1027. As there was no custom or policy that Plaintiff points to as being the cause for her injuries, there is no municipal liability under § 1983 and thus, Plaintiff's claim under that section cannot be brought.

Plaintiff's "failure to train" argument is also unsuccessful under § 1983. A municipality can be liable when its "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). For a claim to be sustained on a failure to train theory, a plaintiff must prove that "the identified deficiency must be closely related to the ultimate [constitutional] injury." *Id.* at 391.

Plaintiff has not made this showing. She alleges that Defendant had a non-discrimination policy and a harassment-free work environment policy in place, and that Defendant investigated Plaintiff's interaction with Mr. Adams after Plaintiff reported it. (D.I. 1 at 4, 7-8). Plaintiff has not identified a deficiency in Defendant's training of its employees that is responsible for her constitutional injury.

For these reasons, Plaintiff has not successfully plead a § 1983 claim. Defendant's Motion to Dismiss is granted as to Count VI.

### D. State Law Claims

Counts VII to XI allege race discrimination, sex discrimination, and retaliation under the DDEA. The DDEA is a state remedy that protects employees from employer discrimination on the basis of certain protected characteristics, including the employee's sex and race. Del. C. § 711(a); *Blades v. Mosaic of Delaware*, 2017 WL 3868238, at *5 (D. Del. Aug. 31, 2017). Defendant argues that Plaintiff's DDEA claims should be dismissed as plaintiffs are not permitted to bring claims under both the DDEA and Title VII. (D.I. 7 at 19). Plaintiff contends that the DDEA are properly brought alongside her Title VII claims, as all of the claims are being brought in the same forum. (D.I. 14 at 29).

DDEA § 714(c) states that a plaintiff "shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays

and duplicative litigation." 19 Del. Code Ann. § 714(c). There is disagreement in this Circuit as to whether a plaintiff may bring claims under both Title VII and the DDEA. *Compare Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 714 (E.D. Pa. 2013) (holding that § 714(c) did not prevent a plaintiff from proceeding with both Title VII and DDEA claims in federal court) *with Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 483 n. 13 (D. Del. 2009) (holding that § 714(c) prevents a plaintiff from simultaneously bringing claims under Title VII and the DDEA). *See also Phifer v. Sevenson Environmental Services, Inc.*, 619 F. App'x 153, 156 n. 5 (3d Cir. 2015) (noting that district courts in the Third Circuit have disagreed over whether a plaintiff may bring a claim under both statutory schemes). As the law is unsettled as to whether a plaintiff can proceed under Title VII and the DDEA, the Court will allow the Plaintiff's claims under both Title VII and the DDEA to proceed.

Title VII and the DDEA are evaluated under the same framework as their language is virtually identical. *See Brangman*, 952 F. Supp. 2d at 724 n.4; *Spady v. Wesley College*, 2010 WL 3907357, at *3 n.4 (D. Del. Sept. 29, 2010). Therefore, Plaintiff's claims under the DDEA will survive Defendant's motion to dismiss to the same extent that the claims did under the Title VII analysis. Counts VII, VIII, IX, and X are DDEA sex and race discrimination claims that mirror Counts I-IV and are similarly dismissed for failure to state a claim. Count XI, Plaintiff's DDEA retaliation claim, mirrors Count V and similarly survives Defendant's motion to dismiss.

## IV. CONCLUSION

Defendant's motion is granted for Counts I-IV and Counts VII-X for failure to state a claim under Title VII or the DDEA respectively. Defendant's motion is also granted as to Claim VI, as Plaintiff has failed to state a claim under § 1983. It is possible that Plaintiff could amend her complaint to state viable claims, particularly in connection with the § 1983 claim, which was

conclusorily pled. Plaintiff is granted three weeks to file a motion to amend the complaint, which, if she chooses to do so, should be accompanied by a brief explaining how the proposed amended complaint cures the deficiencies identified in this opinion. If she chooses not to file such a motion, she should file a notice stating that she does not intend to do so, and Defendant's time to respond will start to run from the time of the filing of the notice.

Defendant's Motion to Dismiss is denied as to Counts V and XI.